# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DORA BELLAMY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-18-CV-60-XR |
| | § | |
| WAL-MART STORES, TEXAS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day came on to be considered Defendant's Motion to Abate or Strike Plaintiff's Second Motion for Sanctions (docket no. 49) and Plaintiffs' Motion for Sanctions (docket no. 50).

## Background

This is a slip and fall case. Plaintiff alleges that on November 11, 2016, she was shopping at the Wal-Mart located at 1515 N Loop 1604 E in San Antonio, Texas. She tripped over a pallet while walking through sliding doors into the garden center. Plaintiff alleges that she sustained severe injuries to her knees and ankles. On November 22, 2017, Plaintiff had surgery on her right knee. Plaintiff filed her lawsuit on January 4, 2018 in state court and the case was removed based on diversity jurisdiction.

There have been several discovery disputes that have arisen in this case. The Magistrate Judge presided over the first round of disputes and eventually ordered that the Plaintiff's [First] Motion for Sanctions be dismissed without prejudice to allow for the

1

deposition of a Wal-Mart employee who may have been responsible for leaving the pallet unattended. The Magistrate Judge further ordered that Defendant supplement its disclosures and discovery responses, amend its objections, and provide Plaintiff with a privilege log as to any withheld documents. See Docket No. 39.

This latest round of disputes centers on what happened next. In responding to the Magistrate Judge's Order, a paralegal in counsel for Defendant's office inadvertently produced documents that Defendant claims are privileged under the attorney-client privilege or work product. Plaintiff responds that some documents are not privileged. With regard to documents that are privileged, Plaintiff argues that these documents nonetheless demonstrate that Defendant's counsel has acted in bad faith and engaged in discovery abuse.

**Analysis**

**A. FED. R. EVID. 502(d)**

This Court encourages parties to enter into a Rule 502(d) Order[1], which states: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court." FED. R. EVID. 502(d). Despite this Court's encouragement, the Defendant did not request such an Order.[2] This was the first of many mistakes by Defendant's counsel in this case. In the absence of a 502(d) Order, the Court then turns to an analysis under Rule 502(b).

**B. FED. R. EVID. 502(b)**

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.

---

[1] See Docket No. 2.
[2] See Docket No. 8.

2

> \*\*\*
>
> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

## 1. What documents are covered by the attorney-client privilege or work-product protection?

Defendant contends that documents Bates Nos. 345-399, 400-406 and 436-480[3] are privileged because they are emails between Defendant and its employees and counsel. The Court has reviewed these documents in camera.

Because Plaintiff concedes the documents are privileged, the Court will not dwell on this issue. However, the Court notes that despite being given a "do over" by the Magistrate Judge, the privilege log that was tendered is deficient.

"The proponent of the attorney-client privilege bears the burden of showing the applicability of the privilege to the particular information in question." *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2012 WL 12895537, at \*5 (W.D. Tex. May 11, 2012). "[C]ursory descriptions are not sufficient to support a claim of privilege." *Id*. "[W]hen practicable, the privilege log should generally include a document number ('Bates number'), author or source,

---

[3] Defendant has withdrawn any claim of privilege as to Bates Stamp Nos. 407- 435.

recipient, persons receiving copies, date, document title, document type, number of pages, and any other relevant nonprivileged information." *Id*.

In this case the privilege log was woefully deficient. Specifically, the Court is unable to ascertain the identities of various recipients of the emails in question. "Because the privilege protects only confidential communications, the presence of a third person while such communications are made or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests. The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

But as stated above, because Plaintiff concedes that the documents are privileged, the Court will not disturb the concession that the documents are covered by the attorney-client privilege.

### 2. Was the disclosure inadvertent?

On April 8, 2019, counsel for Defendant's paralegal sent supplemental responses to Plaintiff's discovery requests as ordered by the Magistrate Judge. The paralegal mistakenly sent a folder labeled "Privilege Log Docs" along with the supplemental responses. The disclosure was inadvertent.

### 3. Did Defendant take reasonable steps to prevent disclosure?

Defendant explains that attorney Bryan Puente separated the privileged documents from the materials to be produced. Rather than producing the privilege log, a paralegal, now

no longer employed at the firm, inadvertently sent the "Privilege Log Docs."[4] Reasonable steps were taken to prevent the disclosure.

   4. **Did the Defendant promptly take reasonable steps to rectify the error?**

Defendant states that it became aware of the inadvertent disclosure when Plaintiff filed its motion for sanctions on July 10, 2019. Thereafter, the next day, attorney Paul Garcia sent an email to Plaintiff's counsel requesting a "claw back" of the documents. The Defendant took prompt, reasonable steps to rectify the error.

Accordingly, pursuant to Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B), Defendant is entitled to "claw back" the documents it inadvertently produced. But that is not the end of this analysis. Although Plaintiff may not further use these documents in this case, preventing their use in analyzing the pending motion for sanctions would result in a perverse result, upending the rules of civil procedure and encouraging discovery abuse.

   **C. Plaintiff's Motion for Sanctions**

In reviewing the inadvertently produced emails, Plaintiff's counsel became aware of the following: (1) As early as July 23, 2018, Defendant's counsel knew of the identity of the store manager who interviewed Plaintiff shortly after her accident; (2) As early as July 23, 2018, Defendant's counsel knew of the identity of the employee who left the pallet unattended; (3) By August 6, 2018, counsel for Defendant knew of the addresses and phone numbers for these two persons; and (4) By February 9, 2019, counsel for Defendant knew the identity of the asset protection manager that was supposed to obtain the surveillance footage.

---

[4] See Docket no. 49, which was filed with a verification signed by an attorney that the recitations made above were true and correct.

With regard to the above individuals, Defendant failed to list them in its Fed. R. Civ. P. 26(a)(1) initial disclosures and failed to timely list them in answers to interrogatories. It is apparent from a reading of the materials submitted either Defendant's counsel was grossly negligent in fulfilling their discovery obligations or they realized they had an uncooperative manager who was refusing to assist in their investigation, and they did not want to disclose the identities of potentially "bad" witnesses. Counsel for Defendant attempts to shift some of this blame by stating that Plaintiff was already aware of the manager and garden center employee because of her prior employment with Wal-Mart. This shifting is unpersuasive. Defendant's counsel had obligations to provide this information and it unreasonably and untimely did not.

In reviewing the inadvertently produced emails, Plaintiff's counsel also became aware of the following: (5) On November 21, 2016, the manager completed a Document Preservation Directive[5] requesting that surveillance video be collected, along with photos taken at the scene and the statement from the customer; (6) By January 16, 2018, Defendant was aware that the store lost the video and that the store manager was refusing to provide any statement; (7) Wal-Mart's outside claim investigation agency reported that exposure on this claim was probable and suggested that the claim be "compromise[d] to avoid spoliation potential"; and (8) on June 29, 2018, one of Defendant's outside counsel wrote an email to "Travis Rodmon-Legal" indicating that the claim file notes video from the scene was saved; "however, the Walmart discovery sources have not been able to provide a video to date."

---

[5] Needless to say, the Defendant also did not timely produce this document and only provided it when the store manager testified to the document during her deposition.

Counsel for Defendant never disclosed to Plaintiff's counsel that at one time video may have existed that was now lost. Rather, counsel merely kept repeating that video does not exist.

Finally, Plaintiff's counsel discovered in the inadvertently produced emails that: (9) Defendant hired an investigator to conduct a full social media/background check on the Plaintiff on June 20, 2018; and (10) outside counsel for Defendant notified "Travis Rodmon-Legal" that surveillance had been completed on the Plaintiff and "it is debatable if the footage will be beneficial…. The investigator informs me that she moves very slowly, gingerly and hobbles a bit."

Counsel for Defendant never disclosed that it possessed video of the Plaintiff. Defendant was under an obligation to disclose any such video as a request for production had been made to that effect. Likewise, Wal-Mart had obtained numerous statements from the Plaintiff prior to her obtaining representation. These statements were requested in requests for production, but not timely disclosed. Counsel for Defendant attributes this failure to the fact that one attorney working this file left the firm and the file was reassigned and the new attorney was unaware of the video's existence. Although this suggests no "bad faith", at the time Wal-Mart sent its responses to requests for production and stated that it had no video of the Plaintiff it violated Rule 26(g).

Plaintiff requests that Defendant be sanctioned for failing to disclose that store surveillance video at one point existed and at some point became "lost." Plaintiff also seeks sanctions because the Wal-Mart manager testified at her deposition that she took multiple photos (including of the pallet) and these photos have never been produced. Likewise, the

manager testified that she obtained a statement from the employee who left the pallet unattended and that statement has never been produced. Plaintiff also seeks sanctions because Wal-Mart did not preserve the pallet in question. Finally, Plaintiff requests sanctions generally for Defendant's failure to honor its discovery obligations. Plaintiff also requests that the Court provide an adverse inference instruction to the jury regarding the missing information.

Plaintiff seeks these various sanctions citing generally to Fed. R. Civ. P. 37 and the court's "inherent authority." The Court will now analyze what relief Plaintiff may be able to secure under each of the applicable sections.

   1. **Rule 37(a)(3)(A), (a)(4), and (c)(1)**

Because Defendant failed to timely disclose individuals with knowledge of relevant facts and attempted to hide these persons from Plaintiff, Defendant is sanctioned as follows: Defendant is ORDERED to reimburse Plaintiff for all attorney's fees associated with the filing of Plaintiff's motion to compel (docket no. 28) and Plaintiff's motion (docket no. 50). Defendant is further ORDERED to reimburse Plaintiff any court reporter fees associated with the depositions of Nick Kouchoukos, the employee who left the pallet unattended, and Marcie Errisuriz, the store manager at the time of this incident.

Although not raised by the Plaintiff, the Court notes that Defendant lodged "boilerplate" objections to virtually all of the requests for production in violation of Fed. R. Civ. P. 34(b)(2).

In addition, counsel for Defendant initially produced a "Claim Form" related to the incident, but then later produced a slightly different version on a later date with no explanation.

**2. Loss of the video and Rule 37(e)**

The loss of electronically stored information is governed by Rule 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

**a. When did the duty to preserve the video arise?**

Generally, federal courts have stated that the "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). *See also Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (*citing Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). Not every slip and fall places a premises owner on notice that

litigation is imminent. In this case, however, by December 28, 2016, the Plaintiff told Wal-Mart's claims manager that she intended to pursue a claim. Plaintiff's counsel argues that the trigger date for preservation occurred even earlier based upon internal company policies that Wal-Mart maintains to investigate customer accidents. At one point in this case counsel for Defendant appeared to agree with this articulation. The Court refuses to accept this date as the trigger date. For companies of any size, this would impose preservation obligations for countless claims where litigation is neither threatened nor reasonably anticipated. Any argument now being raised by Wal-Mart that the trigger date for preservation arose at a later date than December 28, 2016 is belied by the claim file that clearly notes Plaintiff was now threatening she was going to pursue a claim. Although Plaintiff's counsel did not inform Wal-Mart until November 11, 2017 of their representation of Plaintiff, the trigger date in this case arose when Plaintiff herself clearly expressed that she was going to pursue litigation. Indeed, at one point Wal-Mart was taking the position that its entire claims file was privileged because it was under anticipation of litigation. A defendant cannot take the inconsistent position that it was under anticipation of litigation for privilege purposes and then simultaneously deny that it had any duty to preserve relevant and proportional documents and ESI.

   b. **Loss of the video because Wal-Mart failed to take reasonable steps to preserve**

A note in Defendant's file indicates that on November 24, 2016 there was a FedEx tracking number for evidence obtained in the store, but it is not clear whether the video was sent in this package.[6] On January 10, 2017, another CMI entry states that it appears that the video has been lost. It is uncertain whether the video was lost after the preservation trigger of

---

[6] Defendant now maintains that this could not have been the package because that package was not sent from San Antonio. How and why this tracking number was produced by Wal-Mart in discovery in this case is yet another unanswered question.

December 28, 2016. Nonetheless, CMI is recommending by January 11, 2017 to "compromise" the claim to "avoid spoliation potential." Wal-Mart failed to take reasonable steps to preserve the video.

### c. The video cannot be restored or replaced through additional discovery

It is undisputed that the video cannot be restored or replaced. Likewise, because any photographs taken by the manager on the day of the incident have been lost, such photos cannot serve as alternative evidence in this case.

### d. Rule 37(e)(2) is not applicable because Plaintiff has failed to establish that Wal-Mart acted with the intent to deprive her of the video

Although not citing to Rule 37(e)(2), Plaintiff states that an adverse inference instruction or dismissal based on spoliation is proper here because Defendant and or its attorneys have acted in "bad faith" and all of the discovery abuse listed above suffices to establish sufficient circumstantial evidence of "bad faith." The Court disagrees. The claims file indicates that the store manager requested that the footage of the scene be preserved, and it appears that was done and sent to either CMI or some other Wal-Mart affiliated entity. Reasonable efforts were made to attempt to locate the video without success. Defendant's and its counsel's mistakes were failing to be upfront with the loss of the video.

### e. Plaintiff has established prejudice under Rule 37(e)(1)

Having found that Rule 37(e)(2) does not apply, the court does agree that Plaintiff has been prejudiced by the loss of the video and Rule 37(e)(1) is applicable. "Texas requires an invitee to prove four elements on a premises-liability claim: that '(1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed

an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) ... the risk was the proximate cause of injuries to the invitee.'" *Garcia v. Wal-Mart Stores Texas, L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018) (*citing Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014)). "[T]he Texas Supreme Court explained that a plaintiff can prove knowledge, the first element, by showing that (a) the defendant placed the substance on the floor; (b) the defendant actually knew that the substance was on the floor; or (c) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. To prove any of these three propositions, plaintiffs may rely upon either direct or circumstantial evidence." *Id*. at 278.

Given the loss of the video, Plaintiff is prejudiced by not being able to establish that the pallet was placed unattended on the customer floor space for an extended period of time to provide the premises owner a reasonable opportunity to correct the condition.

Further, Defendant has raised a contributory negligence defense in this case.[7] Although unclear, it appears that Defendant is arguing that Plaintiff failed to keep an adequate lookout and that the danger was open and obvious. Although it appears that all parties agree that the Plaintiff tripped over a 4'x4' pallet, there is contradictory evidence as to whether the pallet was painted blue or was merely unpainted wood. Apparently, Wal-Mart is trying to argue that it should have been obvious to the Plaintiff that an obstacle was on the floor because of its color.

The appropriate curative measure in this case is to disallow the Defendant from asserting or arguing any comparative negligence in this case.

---

[7] The Court notes that Defendant's answer, filed originally in state court and never amended, contains numerous inapplicable defenses in this case.

### f. Loss of photos[8] and statements and the pallet

The issue of whether Rule 37(e) also applies to non-ESI spoliation claims involving tangible documents and evidence is unresolved in the Fifth Circuit. Other district courts have applied the Court's inherent authority to deal with the spoliation of non-ESI. *See e.g. Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 776 (E.D. Mich. 2019). In a pre-2015 rule change case, the Tenth Circuit applied the same Rule 37 analysis to non-ESI spoliation issues. *See Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009). According to the 2015 Advisory Committee Note to Rule 37, the rule applies only to electronically stored information.

Although it is not yet clear, it appears that in the Fifth Circuit a court may use its inherent authority to sanction a party for the loss or destruction of non-ESI, but sanctions can only be assessed upon a showing of "bad faith" or "bad conduct." *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("We permit an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'"). Again, counsel for Wal-Mart was less than candid about the loss of photos and statements in this case. Indeed, it appears that it actually believes that its own manager may be lying about what she did in interviewing the Plaintiff because Wal-Mart believes she may have not followed company policies in investigating the accident. If the photos and statements were actually taken by the store manager and placed in an envelope for mailing to CMI, the only thing that has been established it that package was lost inadvertently. With regard to the pallet, there was no duty to preserve the pallet because a preservation obligation had not yet arisen, and the

---

[8] The Court assumes these photos were not digital photos inasmuch as the store manager stated in her deposition that she put several photographs in a file for submission to CMI or some other related Wal-Mart entity.

pallet was likely moved or discarded the day of the accident. Plaintiff fails to establish "bad faith" in the loss of this evidence. Counsel for Defendant's lack of candor to opposing counsel has been rectified by the sanctions imposed above.

### D. Duty of Candor, Cooperation and FED. R. CIV. P. 1

Counsel for Defendant wisely opened its Response brief with the following: "Defendant's counsel acknowledges and accepts it made mistakes during the discovery of this matter. It accepts that consequences may come from the Court as it considers Plaintiff's Motions before the Court."

It is apparent that at the time of the accident, Defendant considered this a low-value or nuisance case. It did not contemplate the severity of the Plaintiff's injuries and medical treatment. But once Plaintiff placed Defendant on notice that she was going to pursue litigation, reasonable and proportionate preservation obligations were required to be met. Likewise, defense counsel may be on billing constraints, but discovery obligations and adherence to the rules of civil procedure must be met.

Federal Rules of Civil Procedure 1 and 26(f) contemplate that the parties meet in good faith to discuss the case and facilitate resolution of the case and discovery issues because the parties have an obligation "to secure the just, speedy, and inexpensive determination of every action." Rather than complying with the rules, defense counsel delayed the production of adverse material and the identity of witnesses and the extent of the inappropriate acts only fully became revealed after an inadvertent production of emails was made (after intervention by the Magistrate Judge).

A reading of the file in this case makes apparent that Wal-Mart has known early on that it is responsible for the pallet being left unattended for some period of time in an area frequented by customers. Many counsel for defendants argue that the burden is on a plaintiff to establish all elements of their causes of action. That is true. But if that is going to be the Defendant's strategy (even when knowing they will likely suffer defeat), this Court is not sympathetic to complaints that litigation is too expensive. In this case, rather than focusing on the extent of Plaintiff's damages, Wal-Mart has now expended significant time and fees on the liability issue its own claims investigator conceded a long time ago.

**Conclusion**

Defendant's Motion to Abate or Strike Plaintiff's Second Motion for Sanctions (docket no. 49) is DENIED, but as stated above Plaintiff may not use the inadvertently produced documents for any other purpose and counsel must return any documents still in Plaintiff's possession, if any, to Defendant. Plaintiffs' Motion for Sanctions (docket no. 50) is GRANTED as stated above. Defendant may not assert any comparative negligence defense in this case, including arguing that the danger was open and obvious.

SIGNED this 19th day of August, 2019.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE